IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| vs. | ) Criminal No. 13-80 |
| | ) Judge Nora Barry Fischer |
| JASON WEITZNER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

I.   INTRODUCTION

Presently before the Court are Defendant Jason Weitzner's Motion to Reduce Sentence and the Government's opposition thereto. (Docket Nos. 73; 76). Defendant's motion has been exhaustively briefed by the parties and supplemented with several exhibits and various updates as to FCI Fairton, where Defendant is presently incarcerated. (*See* Docket Nos. 73; 76; 78; 80; 81; 82; 85; 86; 88). After careful consideration of the parties' positions and for the following reasons, Defendant's Motion to Reduce Sentence [73] is denied, as the Court declines to exercise its discretion to reduce Defendant's sentence.

II.   BACKGROUND

Defendant is currently serving a sentence of 120 months incarceration imposed by the Court on July 25, 2014 following his convictions for conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846 and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Docket No. 64). He was the leader of an interstate oxycodone ring from 2010 through 2012 whereby the Defendant and others, including codefendants Dean Ostella and Jill Eisenshtadt, would "doctor shop" for large oxycodone prescriptions from multiple doctors in Florida; pay kickbacks to the doctors; fill the prescriptions

1

at pharmacies; and then distribute the pills to addicts for profit. (Docket No. 21 at ¶¶ 6-12). The group initially filled the prescriptions at Florida pharmacies but moved the operation to the Pittsburgh-area where the pills could be purchased at cheaper prices, enabling them to make more money. (*Id.*). Defendant further conspired with his accountant father, Lawrence Weitzner, to launder the proceeds of his illegal narcotics dealings. (*Id.*). All of these conspirators pled guilty and served sentences of incarceration, (i.e., Ostella, 36 months' incarceration; Eisenshtadt, 48 months' incarceration; and, Lawrence, 24 months' incarceration). (Crim. No. 13-43, Docket Nos. 162, 195, 200). One of the doctors involved in the conspiracy, Dr. Fadejimi Adelakun, was charged but he absconded from law enforcement and the case against him was dismissed due to his status as a fugitive from justice. (Crim. No. 13-43, Docket Nos. 210, 218).

Defendant has an extensive criminal history with 16 criminal history points placing him in criminal history category VI and was deemed a career offender under the guidelines based on prior convictions for controlled substance offenses with an advisory guidelines range of 292 to 365 months' incarceration. (Docket No. 21 at ¶¶ 27-47, 76). At sentencing, initial rulings by the Court reduced the advisory guidelines range to 130 to 162 months' incarceration. (Docket No. 63). The Court accepted evidence from the parties and heard argument on contested motions for departures based on alleged overrepresentation of Defendant's criminal history and physical health conditions, both of which were denied. (*Id.*). However, the Court granted a motion for a variance, in part, based on Defendant's post-offense rehabilitation efforts to stay clean and sober following a decade-long addiction problem and his physical health conditions including chronic obstructive pulmonary disease ("COPD"); asthma; gastroesophageal reflux disease ("GERD"); and, hepatitis C. (Docket No. 64; *Statement of Reasons*). After considering all of the section 3553(a) factors, the Court sentenced Defendant to 120 months' incarceration, followed by 6 years of supervised

release, waived any fine, and ordered him to pay a $200 special assessment and forfeit two bank accounts and other property to the Government. (Docket No. 64).

Defendant is now 51 years old. (Docket No. 73). He continues to suffer from the medical ailments listed above and has also been diagnosed with sleep apnea, for which he is required to sleep with a CPAP machine. (*Id*.). He is prescribed Spiriva; Symbicort; and Albuterol for his COPD and asthma. (*Id*.). He has served approximately 5 years and 10 months of the 10-year sentence and has a projected release date of April 13, 2022. (*Id*.). During his period of incarceration, Defendant has completed a number of BOP programs, including substance abuse counseling; RDAP drug courses; mental and physical health/exercise programs; and history classes, among others. (*Id*.). He has also attended AA meetings. (*Id*.). He further reports that he has not been assessed any misconducts while incarcerated and participated in the Gate Pass Program at FCI Allenwood prior to being transferred to FCI Fairton. (*Id*.). Defendant advises that if he were granted early release, he could return to his apartment in Monroeville and operate his store in Squirrel Hill, if it survives economic peril due to the pandemic, or, alternatively, he could reside in New Jersey with his recently married sister, so that he could also be near their father. (*Id*.).

Defendant is currently incarcerated at FCI Fairton in New Jersey. (Docket No. 73). Earlier this year, he was in a satellite camp at the facility and was placed in a medical quarantine amidst the pandemic due to his health conditions. (Docket No. 76-1). In July, he was hospitalized with gastrointestinal symptoms, which were treated non-surgically. (Docket No. 86). Upon his return, he was quarantined in FCI Fairton's medium security facility. (*Id*.). During late spring and early summer of 2020, FCI Fairton experienced an outbreak of COVID-19 cases. (Docket Nos. 80; 82; 85; 86). However, the BOP reports at the present time that there are 6 active COVID-19 cases

among inmates and none among staff while 97 inmates and 7 staff members have recovered.  *See BOP COVID-19 Cases*, *available at:* https://www.bop.gov/coronavirus/ (last visited 8/19/20). There is no indication in the record that Defendant has been infected with the coronavirus or experienced severe symptoms as a result.  (*See* Docket Nos. 73; 78; 80; 82; 85; 86).

Defendant made an initial request for compassionate release to the acting warden dated April 15, 2020 and followed up by submitting additional requests on April 22, 2020 and June 1, 2020.  (Docket No. 78).  Although the Government initially contested whether Defendant sufficiently exhausted his administrative remedies, it subsequently retreated from such position and now concedes that he has met the administrative exhaustion requirement.  (Docket Nos. 76; 81).  With that said, the Government opposes Defendant's motion for a reduction of his sentence to time served and corresponding request that he be released to serve his term of supervised release. (Docket Nos. 76; 81; 88).  As all briefing has concluded, the motion is now fully briefed and ripe for disposition.

III.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582.  *See United States v. Pawlowski*, --- F.3d ----, 2020 WL 4281503, at *2 (3d Cir. Jun. 26, 2020).  Pursuant to that provision, a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

> In addition, the reviewing court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies;

4

> (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

United States v. Burrus, Crim. No. 19-284, 2020 WL 3799753, at *4 (W.D. Pa. Jul. 7, 2020) (citing Graves, Crim. No. 17-318, Docket No. 28 (W.D. Pa. Jun. 10, 2020) (Hornak, J.) and 18 U.S.C. § 3582(c)(1)(A)(i)).

IV.   DISCUSSION

Here, the Government concedes that Defendant has exhausted his administrative remedies and that Defendant's COPD diagnosis, coupled with the COVID-19 pandemic, may serve as an extraordinary and compelling reason for a sentence reduction due to the increased risk of complications if he contracts COVID-19. (Docket Nos. 76; 81). Therefore, the only dispute between the parties is whether the relevant § 3553(a) factors warrant a reduction in Defendant's sentence. (See Docket Nos. 73; 76; 78; 80; 81; 82; 85; 86; 88).

As the Court of Appeals recently held, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the district court. See Pawlowski, 2020 WL 4281503, at *2 ("[B]efore granting compassionate release, a district court must consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable.") (internal quotation marks and citation omitted); see also 18 U.S.C. § 3582(c)(1)(A). In addition, under the relevant policy statement in the Guidelines, the Court is to consider whether the defendant is a danger to the safety of any other person or the community as provided in 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2).

Having carefully considered all of the § 3553(a) factors in this case, the Court declines to exercise its discretion to reduce the 120-month term of incarceration, as such sentence remains sufficient, but not greater than necessary to meet all of the goals of sentencing. See 18 U.S.C. §

3553(a). Neither party challenged the length of the sentence on appeal and Defendant admits in his letter to the Court that the sentence was "very fair." (Docket No. 73-2). Indeed, the 120-month sentence represents a significant reduction below the initial advisory guidelines range of 292 to 365 months' incarceration which was computed by the Probation Office. In this Court's estimation, such sentence remains fair and appropriate, for the reasons stated on the sentencing record, which are not outweighed by the increased risk of contracting COVID-19 faced by Defendant while incarcerated at FCI Fairton or another BOP facility. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *see also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within out Circuit.").

With respect to Defendant's medical conditions, "[t]he Court acknowledges that the CDC lists COPD as a medical condition with 'the strongest and most consistent' evidence indicating an increased risk for severe illness from COVID-19." *United States v. Davis*, No. CR 2:20-121-12, 2020 WL 4496581, at *2 (W.D. Pa. Aug. 4, 2020) (quoting https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html). However, Defendant has not demonstrated that his asthma, (which is not moderate to severe), GERD, sleep apnea, nor hepatitis C diagnoses place him at increased risk should he contract the virus. *See e.g., United States v. Hooks*, 2020 WL 4756341, at *5 (E.D. Pa. Aug. 17, 2020) ("The CDC recognizes that 'moderate to severe asthma' may pose a risk of an adverse outcome of

COVID-19" but lesser diagnoses do not and "the CDC has not identified sleep apnea as a factor which increases the risk of developing serious illness from COVID-19"); *United States v. Aslam*, 2020 WL 4501917, at *5 (D. Del. Aug. 5, 2020) (noting that the CDC cannot say that a hepatitis C infection, absent significant liver disease, places an individual at greater risk for severe COVID-19 infection). While FCI Fairton experienced a large number of infections during the spring/summer of 2020, the current statistics provided by the BOP demonstrate that its efforts to control the spread of the virus have been effective to this point. To that end, the institution reports 6 active inmate cases with 97 inmate recoveries and no current staff cases and 7 staff recoveries. *See BOP COVID-19 Cases*, available at: https://www.bop.gov/coronavirus/ (last visited 8/19/20).

The record further reveals that Defendant's medical conditions have been well controlled with medications and that he has been provided with necessary treatment, as needed, including a recent hospitalization to address gastrointestinal issues. (Docket Nos. 73; 76-1; 80; 82; 84-86). He was also placed in medical quarantine at the outset of the pandemic due to his conditions. (*Id.*). Such measures have protected Defendant from the virus' spread at the facility so far as he has not presented any evidence that he has contracted COVID-19.

In any event, while the risks presented by Defendant's medical conditions and the COVID-19 pandemic are serious, they do not outweigh the other § 3553(a) factors supporting the imposition of a 120-month term of incarceration in his case, for which he has served less than 6 years. *See Pawlowski*, 2020 3483740, at * 3. The Court has once again carefully considered all of the § 3553(a) factors and finds that Defendant's "history and characteristics" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just punishment for the offense[, and] to afford adequate deterrence to criminal

conduct," do not justify a sentence reduction here. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B). To reiterate the Court's reasons stated at the sentencing hearing:

- Defendant was the leader of an interstate oxycodone distribution conspiracy which illegally sold thousands of dangerous opiate pills to addicts and moved his operation into this area so that he could make more money;

- he recruited his father, a friend and former girlfriend to join him in these illegal activities, all of whom pled guilty and have served sentences of incarceration;

- some of his distribution activities were centered at his Squirrel Hill business, to which he would like to return and operate if he is released early;

- he has a lengthy criminal history including convictions in New Jersey, Arizona and Florida and was deemed a career offender under the guidelines due to his prior convictions for distribution of marijuana;

- prior sentences of incarceration and probation were not sufficient to deter him from engaging in the instant criminal conduct which was a significant escalation from his prior narcotics cases; and,

- the danger to the community posed by illegal opiate distribution.

(Docket Nos. 21; 63; 64). With that said, the Court recognized Defendant's post-offense rehabilitation efforts and medical conditions and granted a 10-month variance due to same. (Docket Nos. 63; 64). To Defendant's credit, he has made continuing efforts toward post-offense rehabilitation during his period of incarceration by completing a number of courses offered by the BOP; attending AA classes; working; and avoiding misconducts. (Docket No. 73-1). At the same time, "such efforts by themselves do not constitute 'extraordinary and compelling reasons' to grant an inmate compassionate release under the statute and otherwise do not tilt the Court's weighing of the section 3553(a) factors to justify reducing the current 120 month term of incarceration he is

serving to time served." *United States v. White*, Crim. No. 14-178, 2020 WL 4350240, at *2 (W.D. Pa. July 29, 2020).

Beyond such factors, the Court is certainly mindful that Defendant is now 51 years old and the rate of recidivism generally lowers as offenders advance toward retirement age. However, he has an extensive criminal history, substance abuse problems, and committed the instant offenses to both feed his own addictions and generate profits selling dangerous opiates to addicts. More importantly, he lacks an approved release plan and his proposals for reentry are insufficient as he suggests that he would return to this area to run a business which is struggling financially or live in New Jersey near his father, who helped him launder his drug proceeds, without any stable employment opportunities. Hence, the Court finds that continued incarceration for the balance of his sentence remains necessary to protect the public from future crimes.

Overall, the Court finds that this matter is akin to *Pawlowski*, where the Court of Appeals upheld the District Court's decision to decline to reduce the defendant's 15-year sentence to approximately 2 years despite his "suffer[ing] from several health conditions, including hypertensive heart disease, chronic obstructive pulmonary disease (COPD), dyspnea (shortness of breath), sleep apnea, and [having] only one lung as a result of a pulmonectomy." *Id*. at *1. Pawlowski was also incarcerated at FCI Danbury, which at the time had reported 98 COVID-19 cases among inmates, one death of an inmate, and 91 recoveries as well as a similar outbreak among corrections staff. *Id.* at *1. Ultimately, the Court of Appeals found that the District Court did not abuse its discretion by holding that the § 3553(a) factors weighed against granting him compassionate release. *Id*. at *3. The same is true here as the Court finds that the 120-month sentence originally imposed remains sufficient, but not greater than necessary to meet all of the goals of sentencing in Defendant's case. *See* 18 U.S.C. 3553(a)(1).

V.	CONCLUSION

Based on the foregoing, Defendant's Motion to Reduce Sentence [73] is DENIED. An appropriate Order follows.

<i><u>s/Nora Barry Fischer</u></i><br>
Nora Barry Fischer<br>
Senior U.S. District Judge

Date:   August 19, 2020

cc/ecf: all counsel of record.